The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were agreed upon by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. Wausau was the compensation carrier on the risk.
4. On 1 October 1992 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. The following documents concerning plaintiff are stipulated into evidence:
a. Industrial Commission Form 22;
b. Eight pages of employment records; and
c. Twenty-six pages of medical records.
**************
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. Plaintiff was born in 1944 in Vietnam and is a naturalized U.S. citizen. He began working for defendant-employer in 1982 as an electronic technician. His responsibilities included maintenance of all of the machines in the plant.
2. Plaintiff has a prior history of eye surgery. In 1982 and 1983 Dr. Lee A. Clark, Jr., an ophthalmologist, operated on the cornea of both of plaintiff's eyes to remove bilateral pterygia. Pterygia surgery usually produces scarring, and this surgery left a scar in the upper inner aspect of the cornea of each eye. In November 1988 plaintiff received treatment from Dr. Clark for an abrasion on the right cornea.
3. Plaintiff has no prior history of back problems.
4. On 1 October 1992 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer when a furnace he was working on exploded throwing him from the top of the furnace to the concrete floor below, a distance of ten feet. Plaintiff landed on his back and the force of the explosion and resulting fall knocked the right lens completely out of the safety glasses he was wearing. When the furnace exploded dirt and rust in the furnace blew out into the room causing the room to fill with black smoke. Following the injury plaintiff was taken to the hospital emergency room.
5. At the emergency room plaintiff complained of pain in his right hip and pelvis area, back, and neck. Plaintiff also complained that he felt something in his right eye and that it was itching. Plaintiff was treated for right hip contusion and was told to follow up with an eye doctor. Two days after the accident plaintiff's eye became red, teary, painful and infected.
6. On 6 October 1992 plaintiff was seen by Dr. Kevin Payne, an optometrist and associate of Dr. Clark, for complaints of dizziness, headaches, and blurred vision in his right eye that had started two days earlier. Dr. Payne noted scarring on both eyes, right greater than left, which he attributed to the pterygium surgery 10 years earlier. He also noted decreased visual acuity in plaintiff's right eye. At this visit, however, Dr. Payne did not note any type of cut or abrasion in plaintiff's right eye. Dr. Payne referred plaintiff to Dr. Michael Kushner, a neurologist, for further evaluation of plaintiff's head trauma. Dr. Kushner's examination of plaintiff revealed no significant abnormalities.
7. Dr. Payne noted on plaintiff's 23 October 1992 visit that the visual acuity in plaintiff's right eye was decreased due to unknown causes but that his visual field was improving. On 2 November 1992 plaintiff reported that his right eye had been red, painful and tearing for one day. Dr. Payne diagnosed viral conjunctivitis of the right eye. Conjunctivitis is an inflammation of the lining of the inner surface of the eyelid. Prior to this visit, despite plaintiff's continued complaints, Dr. Payne did not offer plaintiff any treatment for his right eye. At this visit, however, Dr. Payne prescribed medicine to treat conjunctivitis. By 6 November 1993 the right eye had not improved. At that time, he referred plaintiff to Dr. Clark.
8. Plaintiff saw Dr. Clark on 11 November 1992. In his examination Dr. Clark noted that plaintiff had corneal lesions typical of a viral keratoconjunctivitis in addition to the previously diagnosed viral conjunctivitis and prescribed medication. Keratoconjunctivitis is an inflammation of the cornea as well as the conjunctiva. By 24 November 1992 the corneal lesions had healed, but plaintiff was complaining of seeing bright lights, black dots, and of delayed vision. Dr. Clark referred plaintiff to Dr. Jeff Taylor, a retinal specialist and associate of Dr. Clark, to examine the back of plaintiff's eye. According to Dr. Clark, Dr. Taylor did not find any abnormality in the back of plaintiff's eye.
9. Dr. Clark and plaintiff had problems understanding one another because of language difficulties. Dr. Clark noted that plaintiff had a difficult time with English and that although plaintiff tried to get his ideas across, it was difficult at times for Dr. Clark to understand plaintiff due to his heavy accent. Throughout the time Dr. Payne and Dr. Clark treated plaintiff, he continued to complain that his right eye hurt, that he could not see well out of it, and that it was not improving. In January 1993 due to plaintiff's continued complaints, Dr. Clark referred plaintiff to Dr. William Banks Anderson, Jr., an ophthalmologist at Duke University Medical Center, for further examination.
10. Plaintiff saw Dr. Anderson on 5 March 1993. At this visit plaintiff told Dr. Anderson of his injury by accident of October 1992 and reported that things looked funny and had tails on them, especially lights at night. Upon examination, plaintiff's best corrected vision was twenty/fifty (20/50) in the right eye with a plus two and a quarter minus two (+ 2.25-2) axis thirty-six (36) lens. Plaintiff's left eye vision was twenty/twenty (20/20). Dr. Anderson observed some haziness of the medial part of the cornea in each eye which he attributed to prior surgery for pterygium.
11. Dr. Anderson also found that plaintiff's right eye contained a raised scar or bump called a hypertrophic corneal scar. This hypertrophic scar was not a result of plaintiff's pterygium surgery because pterygium surgery does not produce hypertrophic scars. Pterygium surgery produces smooth scars. Dr. Anderson also noted that the pterygium scar was further down on the cornea than the hypertrophic scar.
12. Dr. Anderson opined that plaintiff's visual loss was due to the irregularity of the cornea due to the raised scar and that when the cornea is irregular or bumpy, it is typical to see tails around lights and distortions of objects viewed through that eye as described by plaintiff. He felt that plaintiff's hypertrophic scar was the result of either trauma or a chronic inflammation. He did not feel, however, that the viral infections in plaintiff's eye caused the hypertrophic scar.
13. According to Dr. Anderson, hypertrophic corneal scars can be seen following injuries to the cornea that break through the skin that line the cornea and damage the tissue underneath. Initial symptoms would be redness and tearing of the eye. He noted that in plaintiff's case, such an injury could have occurred if foreign material became stuck to the cornea after the explosion. He also noted that it could take between one and three months for this type of scar to appear.
14. Plaintiff has sustained permanent damage in his right eye and present surgery is not likely to improve plaintiff's vision. Dr. Anderson opined, however, that as medical technology progresses, keratorefractive surgery might become an option. Dr. Clark rated plaintiff's right eye impairment at twenty-three and one half percent (23 1/2%) due to the permanent loss of visual efficiency in that eye assuming plaintiff had twenty/twenty (20/20) vision. Although the medical records indicate that plaintiff had twenty/forty (20/40) vision in the right eye in 1988, there was also medical records reporting that plaintiff had twenty/twenty-five (20/25) vision in his right eye on 28 December 1992, approximately three months after the injury.
15. After the emergency room visit on the date of injury, plaintiff did not seek further treatment for his back until March 1994, when he came under the care of Dr. Chapman for complaints of low back, hip and neck pain which he attributed to the injury of 1 October 1992. Plaintiff had not had any injury to his back in the interim and despite daily back pain had not sought treatment because he was preoccupied with his visual problems. Plaintiff showed some improvement under Dr. Chapman's care from March to May 1994. The treatment Dr. Chapman rendered was casually related to plaintiff's 1 October 1992 injury and was reasonably necessary to give relief.
16. Plaintiff has not returned to Dr. Chapman for treatment since May 1994, and at the hearing he did not testify to continuing back problems which he felt required treatment.
17. As a result of the injury by accident on 1 October 1992 plaintiff sustained an injury to his right eye that caused a hypertrophic scar to form on his right cornea. This scar has affected plaintiff's ability to see out of his right eye and has caused permanent damage to that eye.
18. As a result of plaintiff's injury by accident on 1 October 1992 plaintiff has a twenty-three and one half percent (23 1/2%) permanent partial impairment to his right eye.
19. As a result of the injury by accident of 1 October 1992 plaintiff sustained a back sprain.
20. There is no evidence of record to find by its greater weight that plaintiff has any permanent impairment to his back as a result of the back sprain.
21. Plaintiff's work related injuries are compensable.
22. Plaintiff's average weekly wage was $933.88, yielding the maximum compensation rate in 1992 of $426.00.
************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On 1 October 1992 plaintiff sustained an admittedly compensable injury to his right eye by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. On 1 October 1992 plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
3. As a result of his admittedly compensable injury by accident plaintiff has sustained a twenty-three and one half percent (23 1/2%) permanent partial impairment to his right eye and is entitled to compensation. N.C. Gen. Stat. §§ 97-31 (16) and (19).
4. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable eye and back injuries, for so long as such medical treatments, examinations and evaluations are reasonably required to effect a cure, provide relief and/or would tend to lessen his disability. N.C. Gen. Stat. § 97-25.
******************
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to an attorney fee, defendant shall pay to plaintiff in one lump sum, uncommuted, permanent partial disability compensation at the rate of $426.00 per week for 28.2 weeks for the permanent partial impairment to his right eye.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
3. An attorney's fee in the amount of twenty-five percent (25%) of the award to plaintiff herein is hereby approved for plaintiff's counsel. Said amount shall be deducted from said award and paid directly to plaintiff's counsel.
4. Defendants shall pay an expert witness fee of $125.00 to Dr. Chapman and $250.00 to Dr. Clark.
5. Defendants shall pay the costs.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ _________________ DIANNE C. SELLERS COMMISSIONER
BSB:be